IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ALLSTATE INSURANCE CO., | : | |
| Plaintiff, | : | |
| v. | : | CIVIL ACTION |
| | : | NO. 15-1765 |
| NICHOLAS J. POPYACK et al., | : | |
| Defendants. | : | |

Jones, II    J.                                                  December 17, 2015

**<u>MEMORANDUM</u>**

On April 6, 2015, Allstate Insurance Company ("Allstate" or "Plaintiff") filed suit against Nicholas Popyack ("Nicholas"), Jeffrey Popyack ("Jeffrey") (collectively "the Popyack Defendants"), and Andrew Stahl ("Andrew") (collectively "Defendants") for declaratory relief. (Dkt No. 1 [hereinafter Compl.].) On November 20, 2015, Andrew filed a Motion for Summary Judgment, including a Statement of Facts and Memorandum of Law in Support thereof. (Dkt No. 15 [hereinafter Andrew SOF and Andrew Mem.].)[1] Allstate filed a Response to Andrew's Statement of Facts, and a Memorandum of Law in Opposition. (Dkt No. 20 [hereinafter Allstate Resp. and Allstate RSOF].) On November 25, 2015, Allstate filed its own Motion for Summary Judgment and Memorandum of Law in Support thereof. (Dkt Nos. 18, 18-1 [hereinafter Allstate SOF and Allstate Mem.].) Andrew filed a Response to Allstate's Statement of Facts, and a Memorandum of Law in Opposition. (Dkt No. 21 [hereinafter Andrew RSOF and Andrew Resp.].)[2]

Upon consideration of the filings and the record, the Court finds that Nicholas was not covered under the Personal Umbrella Policy in Jeffrey's Allstate Policy because Nicholas was not a "resident" of Jeffrey's "household" at the time of the accident. The Court grants Allstate's Motion for Summary Judgment and denies Defendants' Motions.

---

[1] The Popyack Defendants filed a request to join Andrew's Motion. (Dkt No. 17.) The Court's Policies and Procedures state that the Court disfavors allowing co-defendants to join other defendants' motions. However, the Court will allow the Popyack Defendants to join Andrew's Motion in this unique case.

[2] The Popyack Defendants requested to join in Andrew's response. (Dkt No. 22.) The Court will grant such request while noting the rarity of granting such requests.

## I.      Legal Standard

This Court's subject matter jurisdiction over this contract dispute sounds in diversity jurisdiction. 28 U.S.C. § 1332. As a Court sitting in diversity in the Eastern District of Pennsylvania, the Court will apply the substantive law of Pennsylvania. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938); *Packard v. Provident Nat'l Bank*, 994 F.2d 1039, 1046 (3d Cir. 1993). Applying Pennsylvania choice of law principles, the Court finds that Pennsylvania contract law applies to this dispute.

Under Federal Rule of Civil Procedure 56(a), a court shall grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine [dispute] as to any material fact and that the moving party is entitled to a summary judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); FED. R. CIV. P. 56(a). "If the moving party meets its burden, the burden shifts to the nonmoving party to go beyond the pleadings and come forward with specific facts showing that there is a genuine issue for trial." *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015) (internal citations and quotation marks omitted). Therefore, in order to defeat a motion for summary judgment, the non-movant must establish that the disputes are both (1) material, meaning concerning facts that will affect the outcome of the issue under substantive law; and (2) genuine, meaning the evidence must be such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. "At the summary judgment stage of proceedings, courts do not 'weigh the evidence or make credibility determinations,' but, instead, leave that task to the fact-finder at a later trial if the court denies summary judgment." *Halsey v. Pfeiffer*, 750 F.3d 273 (3d Cir. 2014) (quoting *Petruzzi's IGA Supermarkets v. Darling-Delaware Co.*, 998 F.2d 1224, 1230 (3d Cir. 1993)).

## II.     Background

This case concerns an underlying Philadelphia Court of Common Pleas action. In the Philadelphia Court of Common Pleas, Andrew sued Nicholas and Jeffrey for personal injury relating to an accident. (Andrew SOF ¶¶ 8, 14; Allstate RSOF ¶¶ 8, 14; Allstate SOF ¶ 1; Andrew RSOF ¶ 1.) The underlying accident occurred at 34th Street and Spring Garden Streets

in Philadelphia, Pennsylvania on May 9, 2013. (Andrew SOF ¶¶ 1-2; Allstate RSOF ¶¶ 1-2; Allstate SOF ¶ 2; Andrew RSOF ¶ 2.) Nicholas, driving a 2010 Toyota Camry, struck Andrew as Andrew was crossing Spring Garden Street. (Dkt No. 15-5, Nicholas Dep., Sept. 29, 2015 [hereinafter Nicholas Dep.] 45:13-15; Andrew SOF ¶¶ 3-4; Allstate RSOF ¶¶ 3-4; Allstate SOF ¶ 3; Andrew RSOF ¶ 3.)

The vehicle was insured by Jeffrey, as the named insurer, through Allstate Insurance Company policies, including: an Allstate Auto Insurance Policy ("the Primary Policy") with a limit of $250,000.00 per person and an Allstate Personal Umbrella Policy (the "PUP") with a limit of $1,000,000.00. (Compl., Ex. E [hereinafter PUP]; Dkt No. 15-6, Jeffrey Dep., Oct. 27, 2015 [hereinafter Jeffrey Dep.] 23:7:9; Andrew SOF ¶¶ 4-7; Allstate RSOF ¶¶ 4-7; Allstate SOF ¶¶ 3-4, 8; Andrew RSOF ¶¶ 3-4, 8.) When Jeffrey entered into the PUP, he believed that Nicholas was covered. (Jeffrey Dep. 40:23-41:3; Andrew SOF ¶ 39.) The PUP's premium stated that "Your policy premium has been developed using the following information: 6 Vehicle(s), 3 Operator(s) in the household..." (PUP at 1.) The application for the PUP states that the "Licensed Operators in the Household" are "Jeffrey Popyack, Rene Popyack, and Nicholas Popyack." (Dkt No. 15-9, Application for PUP [hereinafter PUP App.] at 1; Jeffrey Dep. 42:5-11.) The application for the PUP was prepared following a discussion between Mark McCaffrey, the Allstate agent, and Jeffrey. (Dkt No. 15-8, Mark McCaffrey Dep., Nov. 18, 2015 [hereinafter McCaffrey Dep.] 20:20-22.) Information about the licensed operators was derived from such conversations and from Jeffrey's previous auto insurance policy. (McCaffrey Dep. 22:8-15.) The PUP application includes information about the three licensed operators' drivers licenses. (PUP App. at 1.) Nicholas's driver's license stated that his address was Plumtry Drive. (Nicholas Dep. 64:14-19; Andrew SOF ¶ 23; Allstate RSOF ¶ 23.) The Court notes that neither Jeffrey nor Mr. McCaffrey can recall discussing Nicholas's coverage under the PUP at the time of drafting the PUP. (Jeffrey Dep. 42:19-23; McCaffrey Dep. 22:16-23, 23:21-24:2, 42:3-18, 50:21-25.)

After the May 9, 2013 accident, Nicholas provided Allstate with notice of the underlying action and demanded that Allstate defend and indemnify him pursuant to Jeffrey's two policies. (Compl. ¶ 2; Dkt No. 4 [hereinafter Popyack Ans.] ¶ 2.) Allstate tendered a $250,000 payment to Andrew (representing the limit of the Primary Policy). (Andrew SOF ¶ 10; Allstate RSOF ¶ 10; Allstate SOF ¶ 5; Andrew RSOF ¶ 5.) However, Allstate asserts that it has no further obligation to indemnify Nicholas under the PUP. (Popyack Ans. ¶ 3; Stahl Ans. ¶ 3; Andrew SOF ¶ 11;

3

Allstate RSOF ¶ 11; Allstate SOF ¶¶ 5, 7; Andrew RSOF ¶¶ 5, 7.) In the underlying state court action, Andrew seeks to recover damages in excess of the $250,000. (Popyack Ans. ¶ 4; Stahl Ans. ¶ 4; Allstate SOF ¶ 6; Andrew RSOF ¶ 6.) Specifically, Andrew demands an additional $1,000,000 (representing the limit of the PUP). (Popyack Ans. ¶¶ 4, 23; Stahl Ans. ¶¶ 4, 23; Allstate SOF ¶ 6; Andrew RSOF ¶ 6.) The parties disagree about whether or not Nicholas is an insured person under the PUP.

The PUP defines an Insured Person as:

**4.** **Insured Person** means:
   a)     **you**, and any other person who is named on the Policy Declarations;

   b)     any person related to **you** by blood, marriage, or adoption who is a
           resident of your household; or

   c)     any dependent person in **your** care, if that person is a resident of your
           household.

However, persons defined in 4 b) who are over the age of 25 are not **insured persons** for any **occurrence** arising out of the ownership, maintenance or use of any motor vehicle owned by them.

(PUP at 2.) The policy does not include definitions of the term "resident," or "household." (PUP; Andrew SOF ¶¶ 33-34; Allstate RSOF ¶¶ 33-34.)

The policy period was March 20, 2013 to March 20, 2014. (PUP; Andrew SOF ¶ 18; Allstate RSOF ¶ 18.) Nicholas is the natural born son of Jeffrey; thus, they are "related...by blood" as defined by the PUP. (Andrew SOF ¶ 19; Allstate RSOF ¶ 19.) During the policy period, Nicholas was under the age of 25. (Andrew SOF ¶ 20; Allstate RSOF ¶ 20.) Jeffrey is the named insured on the policy declarations for the Allstate PUP. (PUP; Allstate SOF ¶ 12; Andrew RSOF ¶ 12.)

During the policy period, Jeffrey and his wife owned and lived at a house located at 809 Plumtry Drive, West Chester, PA 19382 ("Plumtry Drive"). (Nicholas Dep. 7:17-21, 8:6-8; Jeffrey Dep. 8:12-24; Andrew SOF ¶ 21; Allstate RSOF ¶ 21; Allstate SOF ¶¶ 12-13; Andrew RSOF ¶¶ 12-13.) During the policy period, Nicholas had signed a one year lease with two roommates, with a term running from June 1, 2012 to May 31, 2013 at 627 N. 35th St., Philadelphia, PA ("35th St."). (Nicholas Dep. 30:23-31:1, 32:12-21, 34:23-35:13; Andrew SOF ¶ 26; Allstate RSOF ¶ 26; Allstate SOF ¶¶ 16-17; Andrew RSOF ¶¶ 16-17.)

Prior to the accident, between roughly April 12, 2013 and May 2013, Nicholas was considering moving back to Plumtry Drive. (Nicholas Dep. 43:18-44:1, 88:12-89:1, 90:11-15;

Jeffrey Dep. 21:4-16, 27:10-28:19, 31:24-32:8; Andrew SOF ¶ 27; Allstate RSOF ¶ 27.) During this period, Nicholas would stay overnight at Plumtry Drive roughly once per week. (Nicholas Dep. 89:17-23.) However, he was neither sleeping at Plumtry Drive nor eating meals at Plumtry Drive on a daily basis. (Jeffrey Dep. 52:22-54:6.)

On the day of the accident underlying this case, Nicholas stayed the night at 35th Street. (Nicholas Dep. 62:18-22.) On the day after the accident, Nicholas gave a statement to Allstate about the accident and told Allstate that his "current address" was 35th Street. (Nicholas Dep. 45:16-18, 47:14-48:2; Allstate SOF ¶ 24; Andrew RSOF ¶ 24.) Nicholas confirms that this was a truthful answer. (Nicholas Dep. 49:6-14.) Nicholas brought a bed, a dresser, cups and plates, and other personal belongings to 35th Street. (Nicholas Dep. 36:22-37:17; Jeffrey Dep. 26:9-11, 54:10-24; Allstate SOF ¶ 18; Andrew RSOF ¶ 18.) He cooked most of his meals in the apartment, including dinner roughly every night. (Nicholas Dep. 38:15-40:12.) Nicholas considered 35th Street his "home." (Nicholas Dep. 62:23-63:1; Allstate SOF ¶ 25; Andrew SOF ¶ 25.)

However, Nicholas also considered Plumtry Drive "home" during this same period. (Nicholas Dep. 86:20-22.) While living at 35th Street, he would periodically go home to visit his parents, sometimes staying for a few days, with the frequency of those visits increasing after mid-April 2013. (Nicholas Dep. 49:15-50:17, 84:22-86:12; Allstate SOF ¶¶ 22-23, 27; Andrew RSOF ¶¶ 22-23, 27.) Nicholas would stay there "[i]f [he] was spending time with friends in West Chester, if [his] brother needed to be driven anywhere...[when his] parents took a vacation one time and [he] watched the house and the pets..." (Nicholas Dep. 86:5-12.) The electricity bill for 35th Street was under Nicholas's name; yet, the mailing address for the 35th Street electricity bill was Plumtry Drive. (Nicholas Dep. 58:18-60:22.) His employer would send information about employee policies to the Plumtry Drive address. (Nicholas Dep. 60:24-61:18, 67:4-6.) The police officer's report at the scene of the accident listed Nicholas's address as Plumtry Drive. (Nicholas Dep. 65:10-67:3.) Nicholas was registered to vote at Plumtry Drive. (Nicholas Dep. 95:9-10; Andrew SOF ¶ 24; Allstate RSOF ¶ 24.) Nicholas's 2012 federal and state income tax returns show his residence as Plumtry Drive. (Nicholas Dep. 68:7-71:5; Andrew SOF ¶ 25; Allstate RSOF ¶ 25.) Even during the pendency of the 35th Street lease, Nicholas had a key to Plumtry Drive and could come and go as he pleased. (Nicholas Dep. 107:19-108:1.) He left clothing, computer games, and "mementos from his childhood" at Plumtry Drive. (Jeffrey Dep. 26:13-24.)

However, as to the clothing, the Court notes that he would leave seasonal clothing (e.g., "jackets and long-sleeve shirts" in the summer, and "short-sleeve shits and shorts" in the winter). (Nicholas Dep. 83:12-18.) Around the time of the accident, though Nicholas does not recall if it was before or after, he started moving his belongings from 35th Street to Plumtry Drive. (Nicholas Dep. 89:17-90:6.)

Allstate has refused to provide Nicholas with coverage under the PUP because he "did not reside with [his] father at his address." (Dkt No. 15-3, Ltr. from Allstate to Nicholas, Feb. 19, 2014.)

### III. Discussion
#### a. Nicholas was not a resident of Jeffrey's household at the time of the accident.

The Court must decide whether or not Nicholas was a "resident" of Jeffrey's "household" (Plumtry Drive) at the time of the underlying accident under the terms of the PUP. Construction of the term "resident" in an insurance policy is a matter of law. *Nationwide Mut. Ins. Co. v. Budd-Baldwin*, 947 F.2d 1098, 1100 (3d Cir. 1991) (internal citation omitted)). For the reasons explained herein, the Court finds that he was not.

The terms "resident" and "household" are not defined in the PUP. Ambiguous terms must be interpreted in favor of the insured. *St. Paul Fire and Marine Ins. Co. v. Lewis*, 935 F.2d 1429, 1435 (3d Cir. 1991) (citing *Bateman v. Motorists Mutual Ins. Co.*, 590 A.2d 281, 281 (1991)). In the absence of a contractual definition, the Court turns to precedent. The term "residence" is notably distinguishable from the term "domicile." *Amica Mut. Ins. Co. v. Donegal Mut. Ins. Co.*, 376 Pa.Super. 109, 114-15, 545 A. 2d 343, 346 (Pa. Sup. 1988). A "domicile" is "where a man has his true, fixed and permanent home...to which...he has the intention of returning," while a "residence" is "a factual place of abode." *Id.* (internal citations omitted). Residence requires "only physical presence," and can represent a more transitory living situation. *Id.* Simply put, your residence is a place where you live, as determined by where you are physically present. *Krager v. Foremost Ins. Co.*, 304 Pa.Super. 390, 394, 450 A.2d 736, 738 (Pa. Sup. 1982). Thus, determining whether or not a place is a person's residence is not a question of the person's intent, but rather, is "defined purely in terms of physical facts." *Travelers Personal Ins. Co. v. Estate of Parzych*, 675 F.Supp.2d 505, 509 (E.D. Pa. 2009). To demonstrate that one resides at a particular residence, such person should seek to show evidence of "consistent, personal contact," rather than "[o]ccasional, sporadic, [or] temporary contacts." *St. Paul Fire & Marine Ins. Co.*, 935 F.2d

at 1431-32. A person may live in more than one residence at the same time. *McCarthy v. Philadelphia Civil Service Commission*, 19 Pa.Cmwlth. 383, 387, 339 A.2d 634, 636 (1976).

The undisputed facts in support of Nicholas's dual residency with Plumtry Drive include that such residence was listed on official documents (e.g., his driver's license, his tax forms, etc.), that he had a key to Plumtry Drive and would come and go as he pleased, that he would spend roughly one night per week at Plumtry Drive, sometimes staying for longer periods of time, that he left clothing and other personal mementos at Plumtry Drive, and that he was periodically moving belongings to Plumtry Drive on a weekly basis. The Court notes that it remains disputed whether or not Nicholas began moving back his belongings from 35th Street to Plumtry Drive before or after the accident.

Even considering all of these facts, including the disputed ones, in the light most favorable to Defendants, the Court finds that there is not sufficient evidence to find that Nicholas had a dual residence at Plumtry Drive. The evidence shows that he was sleeping, eating, and living almost every day of his life at 35th Street. He would stay at Plumtry Drive to help his parents with chores (e.g. watching the pets, driving his younger brother to events), or for convenience when visiting friends in West Chester. Even assuming he stayed at Plumtry Drive more than once a week, it is clear that such stays were visits. "Temporary visits, however frequent or regular, are simply insufficient to establish residency." *Budd-Baldwin*, 947 F.2d at 1102.

The Court finds the facts and analysis in *Travelers* particularly instructive. In *Travelers*, our sister Court found that the driver did not have a dual residence at his parents' house where his license, the police report, his tax forms, and other mail stated his parents' address, where he visited his parents' home "at least once a week," kept personal belongings like clothing, and "often" stayed the night when bad weather was predicted. 675 F.Supp.2d at 509. The Court found that such facts showed only "occasional, temporary contacts" with his parents' home. *Id.* at 5. Similarly, here, Nicholas's contacts with his parents' home were only occasional. The personal belongings left at his parents' house were the types of things one leaves in a storage unit (childhood video games, heavy sweaters during the summer months). A storage unit, however frequently visited, is not a residence. One's belonging's physical presence in a place does not establish residence, *one's* presence does. *Schultz v. Encompass, Inc.*, 2004 WL 2075114, at *3 (E.D. Pa. 2004). Further, his driver's license, tax information, and voting registration are not

dispositive of his residence. At best, they reflect his residence at the time he filed the relevant forms, rather than his residence on the particular date of the accident.

The Court notes that it will not consider any evidence that Nicholas considered Plumtry Drive his "home," or that he intended to move back there as Nicholas's intent cannot be a consideration. *See Travelers Personal Ins. Co.*, 675 F.Supp.2d at 509. Evidence that Nicholas had lived at Plumtry Drive and intended to live there again are not pertinent to the determination of residence. *See Amica*, 376 Pa.Super. at 120-21.

In conclusion, Nicholas was not a resident of Plumtry Drive at the time of his accident.

### b. Defendants have failed to state a claim for affirmative misrepresentation.

Under Pennsylvania law, "the proper focus for determining issues of insurance coverage is the reasonable expectations of the insured." *Liberty Mut. Ins. Co. v. Treesdale, Inc.*, 418 F.3d 330, 344 (3d Cir. 2005) (quoting *Reliance Ins. Co. v. Moessner*, 121 F.3d 895, 903 (3d Cir. 1997)). The best evidence of the parties' reasonable expectations is generally the clear and unambiguous language of the insurance policy. *Safe Auto Ins. Co. v. Berlin*, 2010 PA Super 31, 991 A.2d 327, 332 (Pa. Super. 2010).

However, even where a Court has found that an insurance policy's language is clear and unambiguous, and that the person is not a resident under the clear terms of the policy, the Court may still find coverage where the insurance company's agent affirmatively misrepresented the terms of the policy to the insured. *See West v. Lincoln Ben. Life Co.*, 509 F.3d 160, 168-69 (3d Cir. 2007) ("In the absence of an affirmative misrepresentation by the insurer or its agent about the contents of the policy, the plain and unambiguous terms of a policy demonstrate the parties' intent and they control the rights and obligations of the insurer and the insured."). The inquiry concerns whether the agent of the insurer created a reasonable expectation of coverage in the insured (affirmative misrepresentation), or whether the insured's reasonable expectations were frustrated by policy limitations that were clear and unambiguous (not affirmative misrepresentation). *West*, 509 F.3d at 169. The Court looks to whether the insurer "deceived the insured by adding terms at odds with the requested policy." *Mabrat v. Allstate Ins. Co.*, 2012 WL 6209884, at *3 (E.D. Pa. 2012) (citing *Madison Const. Co. v. Harleysville Mut. Ins. Co.*, 557 Pa. 595, 611 n. 8, 735 A.2d 100, 109 n. 8 (1999)). Failure to fully read the terms of the policy cannot alone sustain a claim for misrepresentation. *Standard Venetian Blind Co. v. American Empire Ins. Co.*, 503 Pa. 300, 305, 469 A.2d 563, 566 (1983). Thus, there is a "crucial distinction

between [misrepresentation] cases...and cases where the insured received precisely the coverage requested but failed to read the policy to discover clauses that are the usual incident of the coverage applied for." *Travelers*, 675 F.Supp.2d at 513 (citing *Tonkovic v. State Farm Mut. Auto. Ins. Co.*, 513 Pa. 445, 454, 521 A.2d 920, 925 (1987)).

Defendants argue that Mr. McCaffrey affirmatively misrepresented the PUP's coverage of Nicholas. (Andrew Mem. at 14.) Mr. McCaffrey stated on the PUP application that Nicholas was a licensed operator in the household; and, the PUP's premium was based on three drivers, including Nicholas. (Andrew Mem. at 14.) Thus, Defendants argue, Mr. McCaffrey was aware that Jeffrey wanted Nicholas to be fully covered, and, thus, affirmatively misrepresented to Jeffrey that the PUP covered Nicholas, while knowing full well that the PUP would only cover Nicholas if Nicholas was a resident of Jeffrey's household. (Andrew Mem. at 14.)

In this case, Defendants have pointed to no facts showing that Allstate or its agent, Mr. McCaffrey, affirmatively misrepresented the terms of the PUP to Jeffrey. The evidence during the PUP application process shows that Mr. McCaffrey prepared an application based on information provided by Jeffrey and based on Jeffrey's previous auto policy. In part, Mr. McCaffrey relied on information provided in Nicholas's driver's license. Nicholas's driver's license stated that his address was Plumtry Drive. Neither Jeffrey nor Mr. McCaffrey can recall discussing Nicholas's address or Nicholas's coverage under the PUP. Aside from the information provided by Nicholas's driver's license, there was no other information provided to Mr. McCaffrey about Nicholas's residence. Therefore, as far as Mr. McCaffrey was aware, Plumtry Drive was Nicholas's residence. Thus, even if it is true that Mr. McCaffrey understood that Jeffrey wanted Nicholas covered under the PUP, the inclusion of the residency requirement would not amount to an affirmative misrepresentation because, to the best of Mr. McCaffrey's knowledge, the residency requirement would not have thwarted Jeffrey's goal of coverage for Nicholas because Nicholas was a resident of Jeffrey's household.

The Court finds support for this holding in *Mabrat* and *Travelers*. In *Mabrat*, the insured wrote on her application that a particular house was her "primary residence." 2012 WL 6209884, at *3. The policy at issue contained a residency requirement for coverage. *Id.* The Court found that because she had written on her application, and told her agent, that the house was her "primary residence," "[i]t cannot be said, therefore, that [the insurer]'s inclusion of a residency requirement ran counter to what it should have known [the insured] was requesting." *Id.*

Similarly, in *Travelers*, at the time the policy in question was issued, the insureds had represented to the insurer that their child was living with them. 675 F.Supp.2d at 514. Because their child did not live with them at the time of the accident, and the policy contained a residency requirement, the court found that the policy did not cover the child. *Id.* at 511. The Court found that it did not constitute affirmative misrepresentation to include a residency requirement where the insurer's agent presumably knew that the insureds wanted their child covered by the policy, but, at the time the policy was drafted, also believed that the child was living with the parents. *Id.* at 514.

In conclusion, there is a "crucial distinction between cases where one applies for a specific type of coverage and the insurer unilaterally limits that coverage, resulting in a policy quite different from what the insured requested, and cases where the insured received precisely the coverage that he requested but failed to read the policy to discover clauses that are the usual incident of the coverage applied for." *Tonkovic*, 521 A.2d at 925. This case is assuredly the latter. The Court will not look past the plain meaning of the PUP on the basis of insurer misrepresentation.

## IV. Conclusion

The Court finds that pursuant to the terms of the Allstate personal umbrella insurance policy issued to Jeffrey Popyack, Nicholas Popyack was not a resident of Jeffrey Popyack's household at the time of the accident. The Court GRANTS Plaintiff's Motion for Summary Judgment and DENIES Defendants' Motions for Summary Judgment. Judgement is entered declaring that Allstate is not obligated to provide insurance coverage to Defendant Nicholas Popyack under the personal umbrella insurance policy issued by Allstate to Defendant Jeffrey Popyack.

BY THE COURT:

/s/ C. Darnell Jones, II

_____

C. Darnell Jones, II    J.